416 JULY, 1897.

Crosgrove, Exr. *v.* Crosgrove et al. Vol. 69

GEORGE L. CROSGROVE, EXECUTOR *vs.* THOMAS CROS-
GROVE ET AL.

Second Judicial District, Norwich, May Term, 1897. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

A testator gave legacies to certain individuals "and family" of each.
    *Held* that the word "family," as used in the will in question, did not
    refer to persons living together as an established household, but to
    individuals related as husband and wife, and parents and children; all
    of whom, except children born since the testator's death, were entitled
    to share equally in the respective bequests.
A testator's next of kin who are aliens cannot inherit his real estate in
    this State, but are entitled to their share of the intestate personal prop-
    erty with the resident heirs at law.
A devise of the mortgaged realty itself, by one whose estate therein is only
    that of a mortgagee, is effectual, nevertheless, to transfer such interest
    in the land and mortgage debt.
The validity of a mortgage note held by the decedent at his death, cannot
    be determined in a suit to construe his will.
A bequest to the "Second Congregational Church," *held* a sufficient desig-
    nation, in connection with the facts found, of the Second Congrega-
    tional Society of Norwich, as the legatee.

[Argued May 25th—decided July 13th, 1897.]

SUIT to determine the validity and construction of the
will of Hugh Crosgrove of Norwich, deceased, brought to
the Superior Court in New London County and reserved by
that court, *Elmer, J.,* upon the facts stated in the complaint,
for the consideration and advice of this court.

The will was as follows:—"*Be it known to all persons:*

" That I Hugh Crosgrov of the Town of Norwich in the
County of New London in the State of Connecticut being of
lawful age, of sound and disposing mind, memory and judg-
ment and under no improper influence or restraint do hereby
make publish and declare this to be my last will and testa-
ment hereby revoking all previous wills and codicils by me
made.

" I give devise and bequeath my estate and property real
and personal as follows: that is to say : to mi Brother Thomas
Crosgrov and wife The House on Baltic Stree 30 and the

Rent of House 86 Chestnut street to be capt in Reper and return to mi Ers and to mi sister Mrs. George bennett i Boquath five hundred dollars

"and i Bequath to mi sister Sarah five Hundred dollars and i Bequeth mi nefu Thomas H. Crosgrov seventeen hundred & twenty sex dollars that I lent Him in 1883 with int sinc

"& i Bequeath to mi nefu G. L. Crosgrov seventeen Hundred Dollars.

"& i Bequath to mi nefu William Crosgrov & fomly twelve hundred dollars

"& i Bequeath to sister Elize and husband five Hundred and use of farm and Stok at deth Return to mi hers

"& i Bequeath to mi nefu Mary Jane Kelly ten Hundred dollars

"& i Bequeath to mi nefu Margaret Hughs and famly ten Hundred dollars

"& i Beqeath to mi nefu John Bennett and famley Seventeen Hundred dollars

"& i Bequeath to mi nefu Eliza White and boys ten Hundred dollars

"& i Bequeath to mi nefu Hugh Bennett and famley twelve Hundred dollars

"& i Bequath to mi nefu Anne Shidow and famley ten Hundred dollars

"& i Boquath to mi nefu George Bennett and famley twelve Hundred dollars

"& i Boquath to mi nefu Faney Whitney and famely ten Hundred allers

"& i Boquath to mi nefu James Brownle and famley ten Hundred dollars

"& i Boquath to mi fefu sam Brownlle ten Hundred dollars and i boquath mi friend Hugh King for favours received fifty dollars

"& i Boquath to the second Congregational church five Hundred dollars to be put ausery or the best interests of the church

"I appoint G. L. Crosgrove of Norwich Conn. & John Ben-

VOL. LXIX—27

nett of the Town of Rye Westchester county and state of New York executors of this my last will and testament    In witness whereof'' etc.

The allegations of the complaint, all of which were found true by the trial court, were as follows :—

1. On the 19th day of June, 1893, Hugh Crosgrove of Norwich in New London county, Connecticut, died, leaving his last will and testament dated June 7th, 1893. Said will was on the 30th day of June, 1893, duly probated in the Court of Probate for the district of Norwich, and the plaintiff was duly appointed and qualified and continues to be the executor of said will. John Bennett of Rye, New York, who was appointed in said will coexecutor with the petitioner, refused to accept the executorship.

2. At the time of the death of the said Hugh Crosgrove the following were his next of kin, to wit: Thomas Crosgrove, a brother, of Norwich, Connecticut, and Eliza C. Atchison, a sister, of Montville, Connecticut, and wife of Alexander Atchison of said Montville, Ann C. Bennett, a sister, of Rathfarnham in Ireland, and Sarah Brownlee, a sister, of Belfast in Ireland.

3. Since the death of the testator, Hugh Crosgrove, the said Ann C. Bennett has died in Ireland, leaving the following children, to wit: The said Mary J. Kelly, Margaret Hughes, John Bennett, Eliza White, Hugh Bennett, Annie Sheidow, George Bennett and Fanny Whitney, and leaving a last will of which the said Hugh Bennett and William Hughes are the executors. Since the death of said Ann C. Bennett the said Mary J. Kelly has died in Ireland, leaving her husband, the said Robert Kelly, Senior, and her said children, Wm. Kelly, Margaret Kelly and Robert Kelly in Ireland, her surviving, and leaving a last will of which said husband is the executor.

The said William Crosgrove of Chicago, mentioned in said will, is a nephew of the testator, and at the time of the testator's death his family consisted of his wife, Minnie Crosgrove, and a minor child, Georgia M. Crosgrove. Since the death of the testator two other children have been born

to said William Crosgrove, to wit, the said Harry Crosgrove and Clara M. Crosgrove, and the family of this William Crosgrove now consists of him, his said wife and said three children.

The said Margaret Hughes of Rathfarnham, Ireland, mentioned in said will, is a niece of the testator, and at the time of the testator's death her family consisted of her husband, said William Hughes, Senior, and the following named children : William Hughes, Jr., of age, George Hughes, a minor, James Hughes, a minor, Ann Jane Hughes, a minor, Frances Hughes, a minor, and Margaret E. Hughes, a minor.

The said John Bennett of Park Ridge mentioned in said will is a nephew of the testator, and at the time of the testator's death his family consisted of his wife, Anne J. Bennett, and their children, to wit: Wm. J. Bennett, of age, Mary J. Bennett, of age, George C. Bennett, a minor, Eliza McC. Bennett, a minor, Matilda Bennett, a minor, and Margaret E. Bennett, a minor.

The said Eliza White of Massachusetts mentioned in said will is a niece of the testator, and at his death had three sons, Wm. H. White, then aged 18 years, George F. White, then aged 17 years, and James W. White, then aged 14 years.

The said Hugh Bennett of Ireland, mentioned in said will, is a nephew of the testator, and at the time of the testator's death his family consisted only of himself and his wife, Ellen Bennett.

The said Annie Sheidow of Ireland, mentioned in said will, is a niece of the testator, and at the time of the testator's death her family consisted of her husband, Thomas Sheidow, their minor children, Archibald N. B. Sheidow, Frances B. Sheidow, Mabel A. Sheidow and Thomas G. Sheidow. Since the death of the testator one other child has been born to Annie Sheidow, to wit, Violet E. Sheidow, and the family of said Annie Sheidow now consists of her, her husband, and said five children.

The said George Bennett of Ireland, mentioned in said will, is a nephew of the testator, and at the time of the tes-

tator's death his family consisted of himself and his wife, Mary E. Bennett.

The said Fannie Whitney of Ireland, mentioned in said will, is a niece of the testator, and at the time of the testator's death her family consisted of her husband, James Whitney, and their minor children, Harriet T. Whitney, George A. Whitney, Arthur J. Whitney, Matilda Whitney, Lucy M. Whitney and John F. Whitney.

The said James Brownlee of New York, mentioned in said will, is a nephew of the testator, and at the time of the testator's death his family consisted of his wife, Amelia S. McD. Brownlee, and their minor child, Esther E. Brownlee. Since the death of the testator one other child has been born to James Brownlee, to wit, —— Brownlee, and the family now consists of James Brownlee, his wife and said two children.

In said Norwich there is no corporation of the name the Second Congregational Church, but there is in Norwich a corporation named the Second Congregational Society having the control of a church edifice in said Norwich, commonly called the Second Congregational Church, in which church the testator was a regular attendant and pew holder.

The house No. 30 Baltic street in Norwich has always been owned by the brother of the testator, Thomas Crosgrove, who in October, 1860, mortgaged the same to the testator to secure his note then due the testator for $450, payable on demand with yearly interest. No part of the principal and no interest was ever paid by Thomas Crosgrove or demanded by the testator on said note and mortgage. The note and mortgage were in possession of the testator at his death uncanceled. And from the time said note and mortgage were given there was no acknowledgment of the same as an existing indebtedness by said Thomas Crosgrove, nor any promise by him to pay the same to the testator or to his executor.

At the testator's death there was on the farm devised to sister Eliza and husband one horse and — cows owned by the testator.

The questions as to which an adjudication of the court is

asked, are: "1. In each of the several instances in said will of a bequest to a person named and 'family,' does the husband or wife (as the case may be) of the person named, share in the bequest? Do children born to said person named, since the testator's death, share in the said bequests, and among whom in each of said instances, and in what proportion, shall said bequests be distributed? 2. In whom does the remainder in the Chestnut street house and the farm and the live stock on said farm vest, and can the two alien sisters of the testator be heirs thereof? 3. To whom should the bequest to the Second Congregational Church be paid, and is the title an absolute one in the legatee, or restricted, and if so, to what extent? 4. Is the said mortgage on the Baltic street house a valid asset of said estate, and if so, what effect, if any, has the devise in said will of said Baltic street house thereon?"

*William H. Shields*, for Thomas Crosgrove and wife.

*Charles F. Thayer*, for Alex. C. Atchison et al.

*Solomon Lucas*, for the Second Congregational Society.

HAMERSLEY, J. The word "family" is one of variable meaning; and when used in a will as descriptive of the beneficiaries of a legacy, its legal import will be determined by the intention of the testator expressed in the language of the whole instrument, read in the light of relevant circumstances existing at the time of execution. *Smith* v. *Wildman*, 37 Conn. 384; *Wood* v. *Wood*, 63 id. 317; *St. John, Admr.*, v. *Dann*, 66 id. 401, 405. This will, evidently the product of an intelligent although quite unlettered person, contains nineteen briefly expressed bequests, of which all but two are to the brother and sisters, and nephews and nieces of the testator. His next in kin were one brother and three sisters. His gift to the brother is "to my brother and wife;" to the sister who had a husband, "to my sister and husband;" to the two sisters whose husbands do not appear to have been

living, the gift is "to my sister;" to three nephews and one
niece who do not appear to have had any family, the gift is
"to my nephew;" to one niece whose husband is not living,
the gift is "to Eliza White and boys;" to five nephews and
three nieces who have families, the gift is "to my nephew
and family." Of these eight nephews and nieces, two had
a wife and no children, and the others a wife or husband and
one or more children. In the case of one niece, one of six
children was of age, and in the case of one nephew two of
six children were of age; all the other children were minors.
It does not appear whether the children of age continued to
live with their parents, or whether they were of age at the
time the will was made, three years before the testator's death.
These gifts "to my nephew and family" range in amount
from one thousand to seventeen hundred dollars.

The primary meaning of "family" is the assembly of per-
sons under the rule of the head of one household, including
wife, children, and slaves or servants; but the word is fre-
quently used in common speech without reference to an es-
tablished household, and merely for the purpose of indicating
the individuals related as husband and wife, or parents and
children. We think it clear that the testator used the word
in the latter sense, and intended each gift "to my nephew
and family," to be divided equally between the individuals
of the family: Husband, wife and children. Nothing ap-
pears to except these legacies from the general rule that a
will speaks from the death of the testator; therefore the
children who were unborn at that time do not share in the
legacies. *Gold* v. *Judson*, 21 Conn. 616, 622; *Jones's Appeal*,
48 id. 60, 67.

The sisters of the testator who were citizens of Great Brit-
ain, do not come within any provision of the statute enabling
an alien to inherit real estate. General Statutes, § 15 *et seq.*
Therefore the remainders in the Chestnut street house and
the farm, given by the will to the testator's heirs, vest in the
brother and sister who are citizens of this State. 1 Swift's
Dig. 157; *Evans' Appeal*, 51 Conn. 435. The stock, how-

ever, is personal estate, and the alien sisters can share in this gift.

The devise to his brother Thomas and wife, of the house No. 30 Baltic street, is effectual to transfer any interest the testator had in the land and mortgage debt; such was his plain intention, and it is not defeated because expressed in language that covers a greater interest than he had to give. The validity of the debt cannot be determined on this application.

The bequest of five hundred dollars to the "Second Congregational Church" is an absolute gift, and the description, in connection with the facts found, is sufficient to identify the "Second Congregational Society," of Norwich as the legatee. *Bristol* v. *Ontario Orphan Asylum*, 60 Conn. 472.

The Superior Court is advised to render judgment settling the construction of the will in respect to the questions asked, as follows: 1. Each bequest to a person named and "family," is shared equally by the members of the family, *i. e.*, husband, wife and children, if any, living at the time of the testator's death. 2. The remainders in the Chestnut street house and the farm, vest in the brother Thomas Crosgrove and the sister Eliza C. Atchison. The stock, after the termination of the life use, goes to the brother and three sisters. 3. The bequest to the Second Congregational Church, vests an absolute title in the Second Congregational Society of Norwich. 4. The devise of the Baltic street house, transfers to Thomas Crosgrove and wife any interest the testator may have had in the land and mortgage debt.

In this opinion the other judges concurred.